IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

TINA GRAHAM,

        Plaintiff,

v.                                             Civil Action No. 5:11-CV-87
                                             (BAILEY)

BROOKE COUNTY PARKS AND
RECREATION COMMISSION,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are the plaintiff's Motion for Partial Summary Judgment [Doc. 24], filed March 28, 2012, and the defendant's Motion for Summary Judgment [Doc. 27], filed March 30, 2012. These motions have been briefed and are ripe for decision. Having reviewed the record and considered the arguments of the parties, this Court finds that the plaintiff's motion should be **DENIED** and the defendant's motion should be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

I.    **Undisputed Material Facts**

Brooke County Parks and Recreation Commission, an agency of Brooke County and a political subdivision of the State of West Virginia, operates Brooke Hills Park, a public park facility located in Wellsburg, West Virginia ("the Park"). Tina Graham was employed by the Park as a seasonal employee in 2001, 2002, 2003, and 2004. Graham interviewed for a position for the 2005 season but was not hired. Graham was invited to return to the

1

Park to work in pool concessions in 2006. Over the next several seasons, Graham worked different positions from the pool to concessions, clubhouse, grounds and maintenance, and head of grounds and maintenance. As the manager of the Park, Janice McFadden was Graham's supervisor.

## A.    Workers' Compensation Discrimination

On Friday, May 15, 2009, Graham sustained a work-related injury while operating a tractor on the grounds of the Park. At approximately 5:30 p.m., the tractor slid on a wet hillside, hit dry ground, and jerked Graham in a twisting motion, causing pain in her back. Graham did not immediately report the incident to McFadden, who was out of the office at that time. Graham called and set an appointment with a chiropractor for after work on Monday, May 18, 2009. Upon arriving for work on Monday, Graham informed McFadden about the incident and the upcoming appointment with a chiropractor. No incident report was completed. After completing her shift, Graham went to her appointment and was advised to take time off of work. Graham nevertheless returned to work as scheduled on Tuesday. Graham told McFadden about her appointment but not that the chiropractor recommended that she take leave from work. Graham also worked as scheduled on Wednesday and Thursday. No incident report was completed. Graham was not scheduled to work again until Sunday, May 24, 2009. On Friday, May 22, 2009, Graham called McFadden at home to inform her that she had a follow-up appointment with the chiropractor. The same day, McFadden met with the board of the Park and was instructed to obtain a work release from Graham before she could return to work.

Upon arriving for work on Sunday, May 24, 2009, McFadden asked Graham to come into her office and close the door behind her. At that time, McFadden informed Graham

that the board of the Park required a work release before Graham could return to work. Graham became upset, told McFadden about the chiropractor's recommendation, and questioned why she had been permitted to work her previous four shifts. McFadden persisted. Finally, as Graham turned to leave, McFadden asked her to return her keys to Park facilities.

The full content and context of this conversation is in dispute. At her deposition, Graham testified as follows regarding the conversation:

A. And [McFadden] says, "Tina, did you get a doctor's release?" I said "No." She says, Well, here and Paul DiGlacinto was talking the day before, the 23rd. And he said, "To cover our own asses I need – we need a doctor's release for her to work." Now, mind you, she talked to some board members all week long and nothing was ever mentioned about a doctor's release. And that's what I told her. I said, "Janice," I said, "you never asked the whole week I worked from Monday through Thursday for a doctor's release and you knew I was in pain and agony." I said, "Why all of a sudden?" Because the park president, I guess, at the time wanted a doctor's release –

Q. Okay.

A. – or she couldn't put me on the schedule. I says, "Well, if you don't value a good employer" [sic], I said, "then I guess I'll have to try and collect compensation." And I went to turn and leave. And she says, "Wait a minute, Tina." And I turned around, and she come out from behind her desk and had her hand out and says, "Give me your keys." I said, "Excuse me?" She said, "Give me your keys. You're done."

(Graham Depo. at 124:6-125:9).

At her deposition, McFadden testified as follows regarding the conversation:

Q. Well, was there any discussion about keys, for example, on May 24th[h]?

A. Oh, I asked her for her – for a doctor's excuse. She started to cry. And I told her, "Tina, all I need is a doctor's excuse, and you can get it on Tuesday [in two days], 'cause Monday's a holiday." Then as she was leaving, I said, "You know, just leave the keys. When you come back and just bring in your doctor's excuse, everything will be fine. But I just need a doctor's excuse. The board wants a doctor's excuse."

Q. So you told her to leave her keys?

A. Yes.

Q. Okay. Why did you tell her to leave her keys?

A. Well, I – I assumed she was not going to be back for a while, because she was – she said she was her, and she – her back was hurt.

. . .

Q. Well, you – tell me agin what you said about the keys.

A. As she was leaving I said, "Just leave your keys, and bring me your doctor's excuse. You can have them back."

Q. Why? Why did you say that?

A. Well, I figured she'd be off for a while.

(McFadden Depo. at 42:15-43:21).

At the beginning of June, Graham filed for workers' compensation. By letter dated June 15, 2009, McFadden contested Graham's claim for workers' compensation in part because Graham had failed to complete an incident report. Graham claims she repeatedly asked McFadden for an incident report form from Monday May 18, 2009, to Friday, May 22, 2009, but that McFadden said she had to find them somewhere at the parks office.

In February 2010, Graham filed a claim for unemployment compensation. When sent a Request for Separation Information, McFadden contested Graham's claim she had been terminated, stating that "employee not discharged off on sick leave – not released to

return to work."  ([Doc. 27-2] at 1).

**B.    Overtime Compensation**

Concerning overtime compensation, the Park used a system whereby certain employees, including Graham, had their overtime hours "banked" and then "cashed out" in the off-season when they would otherwise not receive paychecks.  Graham subjectively thought that she had no choice but to have her overtime hours banked.  Graham never complained to McFadden or any other management about the overtime system.  At the end of every work week, Graham was asked if she wished to bank her overtime hours.  She never refused.

McFadden provided the following deposition testimony describing how she "banked" the overtime hours of Graham and other compensatory time employees, including the rate used and the records maintained:

Q.  Okay.  So when the hours were banked, were the employees paid the overtime rate?

A.  When we banked the hours, if they worked four hours, I multiplied four hours times 1.5, so they were banking six hours.

. . .

Q.  All right.  How did you keep track of the hours?  Did you just keep copies of the time cards.

A.  No.  No, once I completed the time cards, I – I had a running time card that documented all the banked hours separate.

Q.  All right.  Where – or did you include that in these papers?

A.  No.  I don't have that.

Q.  Where is that?

A.  I don't have it.  At the end of the year, I – once the hours were done on that card, I got rid of it.

. . .

Q.  So it's absolutely clear, you had a time card which would not have been run through time clock?

A.  Correct.  It was a blank time card.

Q.  Okay.  That was for each employee where you banked hours?

A.  Yes.

Q.  All right.  And at the end of the year, you would dispose of that?

A.  Once it zeroed out, yes.

Q.  Okay.  But that was for your purposes?

A.  That was for my purposes and recordkeeping.

Q.  Did you ever send that to the accountants?

A.  No.

Q.  Okay.  Was it just as simple as handwriting on a time card?

A.  Yes, it was.

Q.  Did you type up a report or anything?

A.  No.

(McFadden Depo. at 92:2-6; 103:9-104:16).

Graham testified that her compensatory time was paid out as "straight time," or at her regular rate of pay.  (See Graham Depo. at 72:24-74:3).

## II.    Procedural History

On May 6, 2011, Graham filed the instant action against the Park in the Circuit Court of Brooke County, West Virginia.  The Complaint [Doc.1-1] alleges two state-law causes of action.  In Count I, Graham alleges that the Park committed workers' compensation discrimination in violation of W.Va. Code § 23-5A-1.  In Count II, Graham alleges that she is owed overtime compensation pursuant to the West Virginia Wage Payment and Collection Act ("WPCA"), W.Va. Code § 21-5-1, *et seq.*  On June 16, 2011, the Park

removed the above-styled action to this Court arguing that Count II arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* [Doc. 1]. Upon the completion of discovery, the parties filed the instant motions for summary judgment.

On March 28, 2012, Graham filed the instant Motion for Partial Summary Judgment [Doc. 24] asking the Court for summary judgment on her overtime claim. Specifically, Graham argues that she is entitled to summary judgment pursuant to the WPCA. In response, the Park contends that Graham's overtime claim arises under the FLSA, not the WPCA.

On March 30, 2012, the Park filed the instant Motion for Summary Judgment [Doc. 27] requesting summary judgment on both of Graham's claims. Regarding Graham's claim for workers' compensation discrimination, the Park contends that the record shows Graham was not terminated, let alone terminated because of her impending claim for workers' compensation. As for Graham's overtime claim, the Park asserts that the FLSA expressly permits the compensatory time off system under which Graham was properly compensated for overtime. In response, Graham argues that she was terminated because of her mention of workers' compensation, that she did not voluntarily agree to participate in the compensatory time off system, and that she was improperly paid overtime at her regular rate of pay.

Jury selection and trial are set to commence in this matter on June 12, 2012.

## **DISCUSSION**

### I.    **Applicable Standard**

The moving party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See **Charbonnages de France v. Smith***, 597 F.2d 406, 414 (4th Cir. 1979).   A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court is required to draw all reasonable inferences in favor of the nonmoving party and to view the facts in the light most favorable to the nonmoving party. ***Anderson***, 477 U.S. at 255.  The moving party has the burden to show an absence of evidence to support the nonmoving party's case. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 325 (1986).   The party opposing summary judgment must then demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. ***Anderson***, 477 U.S. at 248.   A mere scintilla of evidence supporting the case is insufficient.  ***Id.*** at 252.

### II.    **Analysis**

#### A.    **Graham's Motion for Partial Summary Judgment**

Graham asks for summary judgment on her claim for overtime compensation, arguing that said claim arises under the WPCA.  In opposing summary judgment, the Park argues that Graham's overtime claim should be construed as arising under the FLSA.  This

Court agrees.

West Virginia's only overtime law is the West Virginia Minimum Wage and Maximum Hours Standards Act, W.Va. Code § 21-5C-1, *et seq.* ("West Virginia's overtime act"). This act exempts employers who have less than six employees or if eighty percent of the employees are subject to "any federal act relating to minimum wage, maximum hours and overtime compensation." 42 W.Va. C.S.R. § 8-2-9. The WPCA does not mention overtime and as such, the Honorable Joseph R. Goodwin has held that "[t]he WPCA does not create a right to the overtime premium." ***Westfall v. Kendle Intern., CPU, LLC***, 2007 WL 486606, *16 (N.D. W.Va. Feb. 15, 2007).

First, this Court agrees with Judge Goodwin that the WPCA does not create a right to overtime compensation and thus is inapplicable to this case. Second, Graham does not assert application of West Virginia's overtime act, and in any event, there are insufficient facts on the record to determine whether the Park is exempted from West Virginia's overtime act. Finally, the FLSA provides the only basis for federal subject matter jurisdiction in this case. Because there is no diversity between the parties, this action was only removed to this Court based upon the defendant's argument that Graham's overtime claim arises under the FLSA. There has been no motion to remand. For these reasons, this Court construes Graham's claim for overtime compensation as one arising under the FLSA. Accordingly, this Court concludes that Graham's motion for summary judgment under the WPCA should be **DENIED**.

**B.  The Park's Motion for Summary Judgment**

**1.  Workers' Compensation Discrimination (Count I)**

The Park asks for summary judgment on Graham's claim of workers' compensation discrimination, arguing that there is no genuine issue of material fact as to whether Graham was terminated.  This Court disagrees.

W.Va. Code § 23-5A-1 provides in whole that "[n]o employer shall discriminate in any manner against any of his present or former employee because of such present or former employee's receipt of or attempt to receive benefits under this chapter."  "In order to make a prima facie case of discrimination under W.Va. Code, 23-5A-1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act, W.Va. Code, 23-1-1, *et seq.*; and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee."  Syl. pt. 1, ***Powell v. Wyoming Cablevision, Inc.***, 184 W.Va. 700, 403 S.E.2d 717 (1991).  Concerning the second required showing, the Supreme Court of Appeals of West Virginia noted, "We recognize, as have other courts, that a compensation claim need not actually be filed so long as the employee suffered a work-related injury and was attempting to file a claim.  Thus, an employer can still violate the statute by firing the employee before his claim is filed."  ***Powell***, 184 W.Va. at 704, 403 S.E.2d at 722 n. 9 (internal citations omitted).

In the instant case, the Park disputes that McFadden fired Graham at the end of their May 24, 2009, conversation.  McFadden testified that she asked Graham to return her keys because she thought Graham would be off work on leave for a while.  Graham

testified that only after she mentioned workers' compensation did McFadden come out from behind her desk, ask for the keys, and tell her, "You're done." There are no third-party witnesses to this conversation. Instead, this claim turns on which version of the conversation the jury finds more credible. Credibility is undoubtedly a question of fact for the jury. *See JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001) ("The function of the judge at the summary judgment stage is not to determine the truth of a matter or to weigh credibility, but to determine whether there is any genuine issue of material fact that can only be resolved by a finder of fact because it could reasonably be resolved in favor of either party."). Based upon Graham's testimony, a reasonable juror could conclude that McFadden fired her for mentioning that she would pursue a claim for workers' compensation. Accordingly, this Court concludes that the Park's motion for summary judgment on Graham's claim of workers' compensation discrimination should be **DENIED**.

## 2. Overtime Compensation (Count II)

The Park asks for summary judgment on Graham's claim for overtime compensation, arguing that its compensatory time off system complies with the FLSA. In opposing summary judgment Graham contends that: (1) her participation in this system was involuntary and (2) her banked overtime was paid at her regular rate of pay. Below, the Court will consider these two issues in turn.

### i. Voluntariness

Certain employers may use compensatory time to fulfill FLSA overtime obligations as long as the employee voluntarily agrees to receive compensatory time off in lieu of

overtime pay. See 29 U.S.C. § 207(o)(2)(A)(ii). On the issue of voluntariness, Department of Labor regulations provide that:

> An agreement or understanding may be evidenced by a notice to the employee that compensatory time off will be given in lieu of overtime pay. In such a case, an agreement or understanding would be presumed to exist for purposes of section 7(o) with respect to the employee who fails to express to the employer an unwillingness to accept compensatory time off in lieu of overtime pay. However, the employee's decision to accept compensatory time off in lieu of cash overtime payments must be made freely and without coercion or pressure.

29 C.F.R. § 553.23(c)(1).

In the instant case, there is no evidence of coercion or pressure on the part of the employer. Moreover, while Graham may have subjectively thought that she had no choice but to have her overtime hours banked, there is no evidence she ever complained to McFadden or any other management about the overtime system or refused to have her overtime hours banked. As such, there is no genuine issue of material dispute on the issue of whether there was an objectively voluntary agreement between Graham and the Park for Graham to participate in its compensatory time off system. *Accord **Coolidge v. Consolidated City of Indianapolis***, 2003 WL 22327830, *19-20 (S.D. Ind. Sept. 25, 2003).

### ii.    Rate of Pay

The FLSA requires that overtime compensation be paid "at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. §

207(a)(1).  However, "[i]f compensation is paid to an employee for accrued compensatory time off, such compensation shall be paid at the ***regular rate*** earned by the employee at the time the employee receives such payment."  29 U.S.C. § 207(o)(3)(B) (emphasis added).

In the instant case, this Court finds that there is no genuine issue of material fact that Graham was paid overtime at a rate that complies with the FLSA.  First, Graham does not dispute the testimony of McFadden that she recorded 1.5 hours of compensatory time for every hour of overtime that Graham worked.  Second, as emphasized above, the FLSA permitted the Park to pay out Graham's compensatory time at the regular rate.  For these reasons, the Park is entitled to summary judgment.  Accordingly, this Court concludes that the Park's motion for summary judgment on Graham's overtime compensation claim should be **GRANTED**.

## CONCLUSION

For the foregoing reasons, this Court concludes that Graham's Motion for Partial Summary Judgment **[Doc. 24]** should be, and hereby is, **DENIED**.  In addition, this Court concludes that the Park's Motion for Summary Judgment **[Doc. 27]** should be, and hereby is, **GRANTED IN PART** and **DENIED IN PART**.  Specifically, this Court hereby **GRANTS** summary judgment in favor of the Park on Graham's claim for overtime compensation pursuant to the FLSA (Count II).

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** May 31, 2012.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE